**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-1270**

JURALUK UPATCHA,

                    Petitioner,

          v.

JEFFERSON B. SESSIONS, III, Attorney General,

                    Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued:  October 28, 2016                    Decided:  February 22, 2017

Before TRAXLER, DIAZ, and HARRIS, Circuit Judges.

Petition for review granted; reversed and remanded by published opinion.  Judge Harris wrote the opinion, in which Judge Traxler and Judge Diaz joined.

**ARGUED:** Benjamin Winograd, IMMIGRANT & REFUGEE APPELLATE CENTER, LLC, Alexandria, Virginia, for Petitioner.  Arthur Leonid Rabin, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF:** Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Civil Division, Julie M. Iversen, Senior Litigation Counsel, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

PAMELA HARRIS, Circuit Judge:

Facing deportation, petitioner Juraluk Upatcha, a citizen of Thailand, sought a hardship waiver that would allow her to stay in the country despite the fact that her marriage to a United States citizen had ended in divorce. An immigration judge ("IJ") denied the request, concluding that Upatcha failed to demonstrate that she entered into her marriage in good faith, as required by 8 U.S.C. § 1186a(c)(4)(B). The Board of Immigration Appeals ("BIA" or "Board"), reviewing for clear error only, affirmed.

We hold that the BIA applied the wrong standard of review. Whether Upatcha established that her marriage was entered into in good faith under § 1186a(c)(4)(B) is a mixed question of fact and law, and the IJ's ultimate conclusion that the credited evidence did not meet the good faith standard is a legal judgment subject to de novo review. Accordingly, we grant Upatcha's petition and remand so that the Board may review the IJ's determination under the proper standard.

## I.

While living in Thailand, Upatcha was introduced by her sister to Sergio Gonzalez, a naturalized United States citizen living in South Carolina. Because of the distance between them, Upatcha and Gonzalez courted primarily through emails and phone calls. But Gonzalez also made a one-week trip to Thailand to visit Upatcha, and during that trip Upatcha accepted his marriage proposal. Upatcha entered the United States on a fiancé visa on July 13, 2008, and five days later she married Gonzalez.

As a result of her marriage to a United States citizen, Upatcha became a lawful permanent resident on a conditional basis. *See* 8 U.S.C. § 1186a(a)(1) (2013). After a period of two years, that condition would expire, allowing Upatcha to stay in the country permanently, if Upatcha and her husband submitted a joint petition swearing that their marriage was legal, remained in effect, and was not entered into for immigration purposes. *Id.* § 1186a(c)(1); 8 C.F.R. § 216.4(a)(1). But Upatcha could not file that joint petition in 2010 because on October 20, 2008 – approximately three months after entering the country – she initiated divorce proceedings against Gonzalez. That divorce, which became final in February 2009, ended Upatcha's conditional residency and potentially subjected her to removal.

So instead of a joint petition, Upatcha filed for a "hardship waiver," which allows the Secretary of Homeland Security, at his discretion, to "remove the conditional basis of [] permanent residence status" for a noncitizen whose marriage has ended if the noncitizen demonstrates that the marriage "was entered into in good faith." *See* 8 U.S.C. § 1186a(c)(4). The Department of Homeland Security ("DHS") denied Upatcha's petition, citing discrepancies between the couple's divorce decree and the evidence provided by Upatcha. As a result, DHS terminated Upatcha's conditional permanent resident status and charged her with deportability.

Upatcha appeared for removal proceedings before an IJ, where she conceded the charge of deportability and renewed her petition for a good faith marriage waiver under § 1186a(c)(4)(B). After conducting an evidentiary hearing during which Upatcha, Gonzalez, and other witnesses testified, the IJ denied Upatcha's petition.

3

As the IJ recognized, the "critical inquiry" in determining whether the good faith standard has been met is "whether the parties intended to establish a life together at the inception of the marriage." A.R. 65 (citing *Laureano*, 19 I. & N. Dec. 1, 2–3 (B.I.A. Dec. 12, 1983)); *see Chhay v. Holder*, 407 F. App'x 656, 657 (4th Cir. 2011) (unpublished) (same). And in applying that standard, a judge "shall consider evidence relating to the amount of commitment by both parties to the marital relationship," including documentation concerning the intermingling of finances, the length of time of cohabitation, and birth certificates of any children. A.R. 63; 8 C.F.R. § 1216.5(e)(2). Considering Upatcha's testimony, the testimony of other witnesses, and the documentary evidence submitted, the IJ concluded that Upatcha had failed to meet her burden of establishing a good faith marriage under § 1186a(c)(4)(B).

The IJ began by finding that Upatcha's testimony was not credible. That credibility determination rested primarily on what the IJ deemed to be material inconsistencies between Upatcha's account of her marriage and information from other sources, including Gonzalez's testimony. The IJ then went on to analyze other relevant evidence, including the brevity of the couple's one-week in-person courtship, the fact that the couple married without any family members present, the duration of the couple's marriage, and the absence of documentary records showing a joint bank account or other jointly held property. Based on the "totality of the evidence," the IJ held, Upatcha could not show that she had entered into her marriage in good faith, and therefore should be removed. A.R. 70.

4

In a single-member decision, the BIA dismissed Upatcha's appeal. After describing the governing statutory framework, the Board identified the applicable standard of review: "Whether a marriage was entered into in good faith is a factual question, and therefore the Immigration Judge's decision denying a section [1186a(c)(4)(B)] waiver on the merits is reviewed by this Board for clear error." A.R. 4 (citing 8 C.F.R. § 1003.1(d)(3)(i)). As to the IJ's credibility finding, entitled to a "high degree of deference," *id.*, the BIA found no clear error. The Board separately reviewed the IJ's assessment of "numerous other factors," including "uncontested facts" and a "relative lack of documentary evidence," and on the record as a whole, found no clear error in the IJ's determination that Upatcha had not satisfied the good faith standard under § 1186a(c)(4)(B). A.R. 5.

Upatcha timely petitioned this court for review.

## II.

Upatcha argues that the Board applied the wrong standard of review to the IJ's ultimate conclusion that her evidence did not meet the good faith standard. That is a question of law over which we have jurisdiction under 8 U.S.C. § 1252(a)(2)(D), and which we review de novo. *Turkson v. Holder*, 667 F.3d 523, 527 (4th Cir. 2012). And for the reasons given below, we agree with Upatcha: While the BIA properly reviewed the IJ's credibility determination for clear error, it should have reviewed de novo the IJ's ultimate legal judgment that the undisputed facts and credited evidence did not meet the good faith standard of § 1186a(c)(4)(B).

5

Board review of IJ decisions is governed by regulation. Prior to 2002, those regulations provided for de novo review of all aspects of IJ decisions. *See In re S-H-*, 23 I. & N. Dec. 462, 463–64 (B.I.A. Sept. 12, 2002). In 2002, however, new regulations established a bifurcated standard of review. Under the amended regulations – which continue in force today – BIA review of findings of fact and credibility determinations is limited; such IJ findings may be reversed for clear error only. 8 C.F.R. § 1003.1(d)(3)(i) ("Facts determined by the immigration judge, including findings as to the credibility of testimony, shall be reviewed only to determine whether the findings of the immigration judge are clearly erroneous."). But the Board continues to review de novo "all other issues in appeals from decisions of immigration judges," including "questions of law, discretion and judgment." *Id.* § 1003.1(d)(3)(ii).

In commentary accompanying the 2002 amendments, the Department of Justice emphasized that the new clearly erroneous standard of review would apply only to "the specific findings of fact" of immigration judges. Board of Immigration Appeals: Procedural Reforms to Improve Case Management, 67 Fed. Reg. 54,878, 54,890 (Aug. 26, 2002) (to be codified at 8 C.F.R. pt. 3). On a "mixed question of law and fact," on the other hand, while "defer[ring] to the factual findings of the immigration judge unless clearly erroneous," Board members would "retain their independent judgment and discretion . . . regarding the review of pure questions of law and the *application of the standard of law to those facts*." *Id.* at 54,888 (emphasis added) (internal quotation marks omitted).

In *Turkson*, we applied that bifurcated standard of review to an IJ's holding that a noncitizen likely would face torture in his native country, making him eligible for deferral of removal under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, or "CAT." 667 F.3d at 525–26. That holding, we concluded, involved both purely factual determinations and also a legal judgment. *Id.* at 528. Determination of "what would likely happen if the alien was removed," we explained, was factual in nature, and thus subject to clearly erroneous review by the Board under 8 C.F.R. § 1003.1(d)(3)(i). *Id.* But application of the CAT's standard for torture to those facts entailed a legal judgment, which the BIA was to review de novo under 8 C.F.R. § 1003.1(d)(3)(ii). *Id.* In other words, while the Board largely defers to the IJ's findings of historical facts and the likelihood of a future occurrence, "the legal significance of [those] facts" and the "ultimate conclusions to which [they] lead" are matters on which the BIA "exercise[s] its independent judgment" under de novo review. *Id.* at 527.

We followed the same bifurcated approach in *Massis v. Mukasey*, 549 F.3d 631, 636 n.6 (4th Cir. 2008), this time with respect to BIA review of an application for cancellation of removal under the "exceptional and extremely unusual hardship" standard of 8 U.S.C. § 1229b(b)(2). When it comes to a factual determination of "what happened," we explained, the BIA reviews the findings of an IJ under the clearly erroneous standard, consistent with 8 C.F.R. § 1001.1(d)(3)(i). *Massis*, 549 F.3d at 636 n.6 (quoting 67 Fed. Reg. at 54,888–90). But "application of the law to those facts" is different, and an IJ's assessment of "whether those facts amount to 'exceptional and

7

extremely unusual hardship'" as required by law is to be reviewed by the BIA de novo. *Id.*

The good faith marriage determination, we conclude, falls into the same category, presenting a mixed question of law and fact subject to a hybrid standard of review. The IJ in Upatcha's case made a series of factual determinations, first as to the credibility of Upatcha's testimony, but also regarding, for instance, the amount of money sent to Upatcha by Gonzalez and the degree to which the couple's finances were intermingled, the details of their long-distance courtship, and the events that immediately preceded their separation. Those factual determinations – the "what happened" of the case, *see id.* – are subject to clearly erroneous review by the BIA. But just as in *Turkson* and *Massis*, the IJ also made a legal judgment, applying the legal standard for good faith marriage to the facts and deciding whether that standard was met. *See* 667 F.3d at 528; 549 F.3d at 636 n.6. Under 8 C.F.R. § 1003.1(d)(3)(ii), that "ultimate conclusion[]" of law, *Turkson*, 667 F.3d at 527, is to be reviewed de novo by the Board.

Our conclusion, we note, is consistent with the position we have taken in an unpublished decision, *see Chhay*, 407 F. App'x at 657 (applying de novo review to finding that petitioner's "evidence failed to satisfy the legal standard of what constitutes a good faith marriage"), as well as the position taken by the BIA itself in unpublished decisions, *see, e.g.*, *Courtney Malcolm*, AO56-106-237, at *2 (B.I.A. Oct. 7, 2011) ("Whether a marriage was entered into in good faith is not a purely factual question . . . . [T]he [IJ's] conclusion . . . as to whether or not the respondent met his burden to show that his marriage was entered into in 'good faith' is a legal question which we review *de*

8

*novo*.").  It also conforms to the majority view of the circuit courts that for jurisdictional purposes, the ultimate determination of whether credited evidence meets the statutory standard for good faith marriage is a question of law, reviewable by the courts under 8 U.S.C. § 1252(a)(2)(D).  *See, e.g.*, *Ibrahimi v. Holder*, 566 F.3d 758, 763–64 (8th Cir. 2009) (holding that "whether the IJ properly applied the law to the facts" in determining eligibility for good faith marriage waiver is a "legal question" over which courts retain jurisdiction); *Fynn v. U.S. Att'y Gen.*, 752 F.3d 1250, 1252 n.1 (11th Cir. 2014) (collecting authority).  In this context, too, that is, the courts have bifurcated their analysis of the good faith marriage inquiry, deeming credibility determinations and the weighing of evidence unreviewable but exercising jurisdiction over the distinct legal question of whether the "evidence ultimately credited and deemed weighty" by the agency meets the good faith standard.  *Cho v. Gonzales*, 404 F.3d 96, 102 (2d Cir. 2005); *Fynn*, 762 F.3d at 1252–53.

Indeed, the government does not really contest this analysis, conceding that the Board should review de novo an IJ's ultimate legal determination of whether an applicant has marshaled sufficient evidence to satisfy the good faith standard of § 1186a(c)(4)(B).  Br. for Resp't at 25.  Instead, the government argues that this case falls outside the general rule:  Because here the IJ relied solely on an adverse credibility determination, and the BIA reviewed only that credibility determination, the government urges, the clear

9

error standard applies under 8 C.F.R. § 1003.1(d)(3)(i) (credibility findings subject to clear error review).[*]

We cannot agree with the government's reading of the agency proceedings. First, it is clear from the face of the opinions that neither the IJ nor the Board focused exclusively on Upatcha's credibility. It is true that the IJ's opinion devotes an entire section – "Credibility" – to the finding that Upatcha's testimony is not credible. A.R. 63–64. But that section is followed by another – "Bona Fide Marriage," A.R. 65–69 – in which the IJ expressly and at length considers not only Upatcha's testimony but also "the evidence submitted," A.R. 65. Only then does the IJ conclude that "based on the totality of the evidence, [Upatcha] has not met her burden of establishing" a good faith marriage, A.R. 70 – precisely the analysis that the government concedes must be reviewed de novo. *See* Br. for Resp't at 25. And the Board, for its part, evidently reads the IJ's opinion the same way, because its opinion perfectly tracks the IJ's two-part analysis: The Board first reviewed the IJ's credibility determination, finding no clear error, and then went on to consider separately the evidentiary record as a whole – the testimony of witnesses other than Upatcha, documentary evidence, and uncontested facts – before concluding that the

---

[*] Because the dispute in this case centers on the nature of the agency proceedings and not the dictates of 8 C.F.R. § 1003.1(d)(3)(i) and (ii), we have no occasion to consider whether a single-member Board decision construing an agency regulation should be accorded deference under *Auer v. Robbins*, 519 U.S. 452 (1997). *See Martinez v. Holder*, 740 F.3d 902, 909–10 (4th Cir. 2014) (holding that single-member Board decisions are not entitled to *Chevron* deference). All parties, that is, agree on the proper reading of the governing regulation; what is contested is only how to characterize the findings of the IJ and Board in this case.

IJ did not clearly err in determining that Upatcha failed to establish a good faith marriage under § 1186a(c)(4)(B).

Second, even if it could be reconciled with the language of the opinions, the government's credibility-only gloss on the agency proceedings would raise its own set of difficulties. We have held, for instance, that an IJ may not deny relief solely on the basis of incredible testimony and without also considering corroborating evidence, including documentary evidence. *Kourouma v. Holder*, 588 F.3d 234, 241 (4th Cir. 2009). Similarly, the regulation that governs adjudication of applications for good faith marriage waivers requires the agency to "consider evidence relating to the amount of commitment by both parties" to the marital relationship, including relevant documentary evidence. 8 C.F.R. § 1216.5(e)(2). In assessing not only the credibility of Upatcha's testimony but also whether the evidence as a whole satisfied the good faith marriage standard, the IJ and Board were doing precisely as they are charged.

In short, while the Board properly reviewed the IJ's credibility determination and findings of fact for clear error only, whether the credited evidence meets the good faith marriage standard is a legal question subject to de novo review. We of course express no opinion on that ultimate legal issue. Instead, we grant Upatcha's petition and remand this matter to the Board so that it may "exercise its independent judgment" in evaluating the "legal significance" of the facts found by the IJ and the application of the good faith marriage standard to those facts. *See Turkson*, 667 F.3d at 527.

11

## III.

For the foregoing reasons, we grant Upatcha's petition for review, reverse the Board's order denying Upatcha's appeal, and remand this matter to the BIA for further proceedings consistent with this opinion.

*PETITION FOR REVIEW GRANTED;*
*REVERSED AND REMANDED*