**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-1617

ABNER VENTURA PEREZ-MORALES,

Petitioner,

v.

WILLIAM P. BARR, Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: March 21, 2019                                          Decided: July 29, 2019

Before WYNN, DIAZ, and THACKER, Circuit Judges.

Petition for review granted in part and case remanded by unpublished opinion. Judge Diaz wrote the opinion, in which Judge Wynn and Judge Thacker joined.

**ARGUED:** Arnedo Silvano Valera, LAW OFFICES OF VALERA & ASSOCIATES, Fairfax, Virginia, for Petitioner. Colette Jabes Winston, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Joseph H. Hunt, Assistant Attorney General, Jeffery R. Leist, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

Abner Perez-Morales seeks review of a decision by the Board of Immigration Appeals dismissing his applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). The Board determined that Perez-Morales was ineligible for asylum because he failed to establish a sufficient nexus between persecution he experienced and his membership in a particular social group. Because that ruling is not supported by substantial evidence, we grant the petition for review in part and remand to the Board for further proceedings. We also remand Perez-Morales's CAT claim for further consideration in light of our recent decisions addressing how a petitioner may show that a government will likely acquiesce in his torture. We affirm the Board's decision on the remaining claims.

I.

A.

Perez-Morales is a native and citizen of Guatemala. He entered the United States without inspection in December 2013. Two days later, the Department of Homeland Security ("DHS") detained him and initiated removal proceedings. Perez-Morales conceded his removability, but sought asylum, withholding of removal, and CAT protection, claiming that he would be unsafe in Guatemala for two separate reasons.

First, Perez-Morales fears that Los Zetas, a gang that operates in Guatemala, will target him because he witnessed the gang commit several murders. In October 2013, Perez-Morales was delivering bread for a bakery when he saw members of the gang decapitate

2

and dismember several men on the side of a rural road—an event he described as a "massacre." A.R. 193, 246. The Zetas chased Perez-Morales, stopped his car, beat him and robbed him, and threatened to kill him if he filed a police report. They told him "[t]his is just a warning so that you see the next time, it will be worse." A.R. 105. Perez-Morales didn't go to the police because he believed that they had been bought off by the Zetas, and that the gang would retaliate by killing him. He went into hiding in another part of Guatemala, and two months later fled to the United States.

Second, Perez-Morales fears retaliation by Guatemalan police because his brother Urbano, a former police officer, refused to participate in corruption. Around 2007, Urbano was jailed for three months in retaliation for investigating whether his supervisor possessed illegal drugs. After his release, Urbano continued to face threats that he and his family would be killed. About eleven months later, he fled to the United States. Urbano testified that the reason Perez-Morales came to the United States in 2013 was because people were following him. Urbano believed these were his former colleagues seeking to retaliate against Perez-Morales because they could no longer reach Urbano. However, Urbano's ex-colleagues didn't harm Perez-Morales during the five years he remained in Guatemala after Urbano left, nor have they harmed Perez-Morales's three sisters who remain there.

B.

In his application for asylum and withholding of removal, Perez-Morales contended that he experienced past persecution (the death threats and beating) and fears future persecution on account of both his membership in a particular social group (roughly defined as witnesses of crimes committed by the Zetas) and his familial relationship to

3

Urbano. He also sought protection under the CAT, claiming that he's likely to be tortured by the Zetas and Urbano's former colleagues if he's removed to Guatemala.

The Immigration Judge denied Perez-Morales's applications in an oral decision. He opined that Perez-Morales's story about the gang murders "is somewhat implausible" and that he didn't "fully believe" it, but declined to make an adverse credibility determination. A.R. 46–47. Although the judge believed Perez-Morales "could be exaggerating" his story, he found that Perez-Morales "saw something, and that he was threatened, and he was afraid." A.R. 47.

However, the Immigration Judge concluded that Perez-Morales had failed to establish a nexus between the alleged persecution and his membership in a particular social group of gang crime witnesses. The judge also dismissed Perez-Morales's claim based on his relationship to Urbano, finding that this didn't support a well-founded fear of persecution. The judge dismissed the CAT claim, in part because Perez-Morales hadn't established that the Guatemalan government was likely to acquiesce in any torture he would suffer at the hands of the Zetas. Finally, the Immigration Judge found that all three claims could be dismissed on alternative grounds because Perez-Morales could reasonably be expected to avoid persecution by relocating within Guatemala.

Perez-Morales unsuccessfully appealed to the Board. Regarding the gang murders claim, the Board concluded that Perez-Morales's "testimony did not reveal any motivation other than the criminal intent to take his property and to threaten retribution if he reported what he had witnessed to the police." A.R. 4. The Board also upheld the denial of the

4

remaining claims, as well as the alternative finding that Perez-Morales could relocate within Guatemala.

This petition for review followed.

## II.

An applicant is eligible for asylum if he has a well-founded fear of persecution "on account of" certain enumerated grounds, including "membership in a particular social group." 8 C.F.R. § 1208.13(b). Persecution is "on account of" membership in a group, satisfying what is often called the nexus requirement, if the group membership is "at least one central reason for" the persecution. *Crespin-Valladares v. Holder*, 632 F.3d 117, 127 (4th Cir. 2011) (quoting 8 U.S.C. § 1158(b)(1)(B)(i)). If the applicant has experienced qualifying persecution in the past, he is entitled to a presumption of eligibility. 8 C.F.R. § 1208.13(b)(1). DHS can rebut this presumption by showing either that a fundamental change in circumstances has negated the applicant's well-founded fear of persecution, or that the applicant could reasonably be expected to avoid future persecution by relocating to another part of his home country. *Id.* § 1208.13(b)(1)(i).

We review the Board's legal determinations de novo and its factual findings for substantial evidence, *Cordova v. Holder*, 759 F.3d 332, 337 (4th Cir. 2014), which means they are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). The Board's ultimate discretionary judgment to grant or deny asylum is "conclusive unless manifestly contrary to law and an abuse of discretion." 8 U.S.C. § 1252(b)(4)(D).

5

Here, we vacate the Board's denial of Perez-Morales's gang murders claim because we reject both the finding that he failed the nexus requirement and the alternative finding that he could safely relocate within Guatemala. Next, we affirm the Board's determination that Perez-Morales hasn't established a well-founded fear of persecution on account of his relationship to Urbano. Finally, we remand the CAT claim for further consideration in light of our recent precedents.

A.

We first consider the Board's finding that Perez-Morales failed to establish a sufficient nexus between his membership in the particular social group of witnesses to the Zetas' crimes and the beating and threats that he experienced.[1] This is a factual determination that we review for substantial evidence. *Cruz v. Sessions*, 853 F.3d 122, 128 (4th Cir. 2017).

Our nexus decisions have firmly established a core principle that resolves this case: A sufficient nexus exists where membership in a particular social group is why the applicant, rather than some other person, is targeted for persecution. *E.g.*, *Hernandez-Avalos v. Lynch*, 784 F.3d 944, 950 (4th Cir. 2015). This principle applies whether the persecution is motivated by freestanding animus against the group, or by some other motive

---

[1] Neither the Immigration Judge nor the Board addressed whether the beating and threats qualify as persecution or whether Perez-Morales's proposed group qualifies as a particular social group. We assume for purposes of this petition that these requirements are satisfied, since we may only affirm the denial of asylum based on the reasons given by the agency. *See Nken v. Holder*, 585 F.3d 818, 822 (4th Cir. 2009) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943)).

like gang recruitment, extortion, or revenge. *See id.* at 949–50. Rather than focusing on the persecutors' reasons for targeting the *group*, we ask whether membership in the group explains the decision to target the *applicant* instead of someone else. *See Salgado-Sosa v. Sessions*, 882 F.3d 451, 458–59 (4th Cir. 2018). And a sufficient nexus can exist where there are multiple or intertwined central reasons for the persecution, so long as group membership is one of them. *Oliva v. Lynch*, 807 F.3d 53, 60 (4th Cir. 2015).

In this case, the Board found that the Zetas' motive for attacking Perez-Morales was "to threaten retribution if he reported what he had witnessed to the police." A.R. 4. This finding compels the conclusion that membership in the group of witnesses to the Zetas' crimes was a central reason why the gang targeted Perez-Morales instead of someone else. Simply put, the gang could not have targeted Perez-Morales based on "what he had witnessed" without also targeting him based on the fact that he was a witness.

This conclusion is not altered by the fact that the Zetas sought to cover up a particular crime, rather than to systematically persecute crime witnesses. The situation is analogous to *Hernandez-Avalos*, where the applicant refused to let her son join a gang and was then threatened by gang members who sought to change her mind. 784 F.3d at 949–50. Although the gang had no generalized campaign to persecute the families of potential recruits, they nonetheless targeted the applicant, "rather than another person, because of her family connection to her son." *Id.* The family tie was a central reason for the persecution, even though the gang's efforts to recruit the son were also a central reason and even though the two were intertwined. So too here. Covering up the murders that Perez-Morales witnessed may be a central reason for persecuting him, and this reason may be

7

closely intertwined with Perez-Morales's membership in the proposed social group as it has been defined,[2] but the group membership is nonetheless a central element in explaining why he was targeted instead of someone else.

In finding otherwise, the Board incorrectly relied on a line of decisions that say asylum eligibility can't be established solely by fears of general crime and unrest, or of violence arising from a purely private dispute. *See* A.R. 4 (citing *Velasquez v. Sessions*, 866 F.3d 188, 194–95 (4th Cir. 2017)). Those cases don't control here because, unlike a victim of indiscriminate crime or private violence, Perez-Morales would not have been targeted by the gang but for his membership in the proposed group. Moreover, in *Velasquez* we distinguished the private, intrafamilial custody dispute at issue from cases involving "outside or non-familial actors engaged in persecution for non-personal reasons, such as gang recruitment or revenge." 866 F.3d at 195–96. Perez-Morales's case falls squarely in the latter category. Like gang recruitment, the Zetas' efforts to cover up their crimes reach beyond a single family and aren't personally motivated.

Nor are we persuaded by the Board's observations that Perez-Morales "did not report the incident to the police" or have further contact with the Zetas. A.R. 4. Because Perez-Morales asserts he experienced past persecution (and the Board has made no

---

[2] Of course, a particular social group must be "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Oliva*, 807 F.3d at 61 (quoting *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (B.I.A. 2014)). We express no opinion about whether Perez-Morales's proposed group satisfies these requirements—an issue the Board did not address.

contrary finding), he is entitled to a presumption of asylum eligibility regardless of what followed that persecution.  8 C.F.R. § 1208.13(b)(1).

We therefore vacate the Board's nexus finding.[3]

B.

We also reject the Board's alternative ground for denying asylum—that Perez-Morales could safely relocate within Guatemala—as it relates to the gang murders claim.

In cases of past persecution, we presume that the applicant is eligible for asylum.  8 C.F.R. § 1208.13(b)(1).  DHS may rebut this presumption by (1) identifying a specific area of the applicant's home country where the risk of persecution would not support a well-founded fear, and (2) showing that it would be reasonable to expect the applicant to relocate there.  *Matter of M-Z-M-R-*, 26 I. & N. Dec. 28, 33–34 (B.I.A. 2012).  DHS bears the burden to establish the possibility and reasonableness of such relocation by a preponderance of the evidence.  8 C.F.R. § 1208.13(b)(1)(ii).

The Immigration Judge found that Perez-Morales could safely relocate within Guatemala because "[t]he people who saw him at this murder scene are obviously restricted to a small part of the country."  A.R. 48.  The Board affirmed this finding, stating that Perez-Morales "did not carry his burden of establishing that it would be unreasonable for him to internally relocate."  A.R. 4.

---

[3] The Board dismissed Perez-Morales's claim for withholding of removal based on the same reasoning it used to dismiss his asylum claim.  Accordingly, we also vacate the Board's decision on withholding of removal and remand for further consideration.

We vacate this finding because the Board committed legal error by placing the burden of proof on Perez-Morales. Moreover, the record evidence on relocation suggests that DHS hasn't met its burden. Perez-Morales testified that gangs operate in countrywide networks in Guatemala, such that the Zetas could find him even if he relocated internally. DHS offered no evidence to rebut this testimony, and the Immigration Judge's assumption that those present at the murder scene are restricted to a small part of the country wouldn't mean that Perez-Morales could safely relocate if other members of the Zetas' network are present throughout the country.

## C.

Perez-Morales also claims that he fears persecution based on his family relationship to his brother Urbano, who refused to participate in police corruption. We affirm the Board's finding that Perez-Morales did not establish a well-founded fear of persecution based on this relationship.

Although we have held that death threats qualify as persecution, *Hernandez-Avalos*, 784 F.3d at 949, the alleged threats to kill Urbano's family don't support Perez-Morales's claim that he has a well-founded fear of persecution. First, the threats were directed broadly at Urbano's family, rather than specifically "targeted" at Perez-Morales. *See Crespin-Valladares*, 632 F.3d at 127 (distinguishing targeted threats from general crime and intimidation). And nothing in the record suggests that the threats were credible or that the unidentified parties making them intended to carry them out. *See generally Cortez-Mendez v. Whitaker*, 912 F.3d 205, 209 n.* (4th Cir. 2019) (discussing circumstances that bear on whether death threats are direct and credible enough to constitute persecution).

10

Most importantly, Perez-Morales remained in Guatemala for five years after Urbano fled the country and was never harmed by Urbano's former colleagues during this period. Perez-Morales's three sisters have also remained in Guatemala unharmed, casting further doubt on the likelihood that Urbano's ex-colleagues will act on their threats against the family.

Urbano's speculation that Perez-Morales came to America to flee his ex-colleagues doesn't compel a contrary conclusion. This testimony was based on limited personal knowledge, since Urbano was in the United States while most of the relevant events occurred in Guatemala, and it doesn't overcome the fact that Perez-Morales lived safely in Guatemala for years.

D.

Finally, Perez-Morales seeks protection under the Convention Against Torture. To succeed on this claim, he must prove (1) that he is more likely than not to be tortured if removed to Guatemala, and (2) that this torture will occur at the hands of the government or with its consent or acquiescence. *Turkson v. Holder*, 667 F.3d 523, 526 (4th Cir. 2012) (citing 8 C.F.R. § 1208.16(c)(2)). We review the Board's denial of CAT relief for substantial evidence. *Suarez-Valenzuela v. Holder*, 714 F.3d 241, 245 (4th Cir. 2013).

We agree with the Board that Perez-Morales is unlikely to be tortured by Urbano's ex-colleagues, for the reasons discussed above. However, we remand the CAT claim for the agency to further consider whether the Zetas are likely to torture Perez-Morales with the government's consent or acquiescence. The Board apparently reasoned that Perez-Morales didn't establish a likelihood of government acquiescence in any such torture

11

because he "failed to report his encounter with the gang members in 2013 to the police." A.R. 5; *see also* A.R. 47–48 (decision of Immigration Judge). The implicit premise is that a petitioner can't establish government acquiescence unless he has notified government officials of the threats or encounters that give rise to his fear of torture.

The Board's premise has been called into question by some of our recent decisions, which recognize the troubling reality of police corruption in Guatemala and certain other Central American countries. These decisions make clear that, at least in some circumstances, a petitioner can establish a likelihood of acquiescence without going to the police if corruption or collusion with gangs could make it futile or dangerous to do so. *See, e.g.*, *Orellana v. Barr*, 925 F.3d 145, 153 (4th Cir. 2019) ("[T]here is no requirement that an applicant persist in seeking government assistance when doing so (1) 'would have been futile' or (2) 'have subjected [her] to further abuse.'" (quoting *Ornelas-Chavez v. Gonzales*, 458 F.3d 1052, 1058 (9th Cir. 2006))); *Alvarez Lagos v. Barr*, 927 F.3d 236, 256 (4th Cir. 2019) (vacating denial of CAT claim where the Immigration Judge "omitted any mention of the substantial evidence marshalled by Alvarez Lagos to show that local government police officials acquiesce and indeed actively collude with [a gang] in her neighborhood"); *Rodriguez-Arias v. Whitaker*, 915 F.3d 968, 974–75 (4th Cir. 2019) (granting review of CAT claim based on the Board's failure to consider evidence of country conditions relating to police involvement in torture).

Perez-Morales has offered evidence of such futility here. He testified that he didn't report the Zetas incident to the police because he believed they had been bought off by the gang. In his credible fear interview, Perez-Morales stated that a friend was killed after

12

reporting gang members to the police. And he argues that Urbano's experience as a police officer and the State Department's country condition reports further establish police corruption that could rise to the level of acquiescence in torture.

The Board did not discuss this relevant evidence in its opinion. We thus vacate and remand the CAT claim for the agency to fully consider the evidence and determine, in accordance with our precedents, whether Perez-Morales can show a likelihood of government acquiescence despite not having reported the Zetas' threats to the police. *See Nken*, 585 F.3d at 822 ("[W]hen a BIA order does not demonstrate that the agency has considered an issue, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" (quoting *INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002))).

III.

For the foregoing reasons, we grant Perez-Morales's petition for review with respect to his claims for asylum and withholding of removal based on past persecution by the Zetas, as well as his CAT claim based on government acquiescence in torture by the Zetas. We remand for the agency to reevaluate these claims. We deny the petition for review with respect to the remaining claims.

*PETITION FOR REVIEW GRANTED IN PART*
*AND CASE REMANDED*

13