**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-2071

MELVIN BLADEMIR HERCULES-TORRES,

Petitioner,

v.

MATTHEW G. WHITAKER, Acting Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: September 25, 2018               Decided: November 29, 2018

Before KING and KEENAN, Circuit Judges, and John A. GIBNEY, Jr., United States District Judge for the Eastern District of Virginia, sitting by designation.

Petition for review denied by unpublished per curiam opinion.

**ARGUED:** Benjamin R. Winograd, IMMIGRANT & REFUGEE APPELLATE CENTER, LLC, Alexandria, Virginia, for Petitioner. Patricia E. Bruckner, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Laura Jacobson, L&L IMMIGRATION LAW, PLLC, Alexandria, Virginia, for Petitioner. Chad A. Readler, Acting Assistant Attorney General, Bernard A. Joseph, Senior Litigation Counsel, Office of Immigration Litigation Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Petitioner Melvin Blademir Hercules-Torres, a native of El Salvador, petitions for appellate review of the September 2017 decision and order of the Board of Immigration Appeals (the "BIA") that rejected his applications for asylum, withholding of removal, and protection under the Convention Against Torture (the "BIA Decision"). As explained below, we deny the petition for review.

I.

A.

In April 2014, Hercules-Torres departed El Salvador at the age of seventeen, seeking to escape a violent gang called Mara 18. In May 2014, Hercules-Torres entered the United States as an unaccompanied minor child. Later that month, the immigration authorities apprehended him in Texas and initiated removal proceedings before an Immigration Judge (the "IJ").

In October 2015, Hercules-Torres applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). He sought relief for several reasons, including fear of violence due to religion, anti-gang political opinions, and membership in a social group of "young tattooed Salvadoran men," as well as his belief that he would be tortured if he returned to El Salvador. *See* A.R. 269-315, 982-83.[1] In

___

[1] Citations herein to "A.R.___" refer to the contents of the Administrative Record filed in this proceeding.

2

order to allow a full administrative assessment of his claims, the IJ closed the removal proceedings.

While Hercules-Torres awaited further action on his claims for relief from removal, he resided with an aunt in Virginia. During his time there, he attended high school and worked at a Mexican restaurant. After being arrested three times, however, the immigration authorities again detained Hercules-Torres and resumed removal proceedings. On February 7, 2017, the authorities determined that he was not eligible for asylum and referred his case to the IJ for handling of the removal process.

B.

On February 8, 2017, the IJ conducted a hearing on the removal issues. Conceding removability before the IJ, Hercules-Torres pursued his requests for asylum, withholding of removal, and CAT protection. By his testimony (which was credited by the IJ), that of his brother Wilfredo, and other evidence, Hercules-Torres sought to prove to the IJ that, upon being returned to El Salvador, he would be harmed due to religion, political opinions, and social group. He also claimed that he would be persecuted and tortured. The following factual background was developed in the IJ proceedings.

1.

Hercules-Torres was born in 1997 in Apopa, San Salvador, where he lived with his father, mother, and siblings. While growing up in El Salvador, Hercules-Torres lived a productive and law-abiding life. He held a job with an auto repair shop and attended school, studying to be a mechanic. Hercules-Torres was a Christian who attended church three or four times a week and participated in religious programs for vulnerable youth.

3

Despite his background, however, Hercules-Torres could not escape the gang-related activities in that country.

Members of the Mara 18 gang first approached Hercules-Torres in the fall of 2013, when he was sixteen years old. Consistent with the practices of such gangs in El Salvador, Mara 18 recruited students of about that age to deepen its roster. After making contact with Hercules-Torres, the gang members approached him several times a week, trying to get him involved with their illicit activities.

Hercules-Torres resisted the Mara 18 recruitment efforts. He informed the gang members that he could not join because of his religion. More specifically, Hercules-Torres said he would not join because he was a Christian and did not "want to be a part of the things they do." *See* A.R. 330. Despite those repudiations, Mara 18 did not abandon its recruitment efforts. The gang members offered Hercules-Torres clothing, and they asserted that it was better for him to be a part of the gang than to attend church. This pattern — the gang's request that he join, followed by Hercules-Torres's explanation to them that he could not join due to his religious beliefs — occurred multiple times. As the gang members pursued him, Hercules-Torres feared that his refusal to join would lead to violence against him and his family.

One day as Hercules-Torres was leaving school, he was approached by a member of Mara 18 who was in his early twenties. At first, the gangster asked Hercules-Torres to "hang out." *See* A.R. 207. After Hercules-Torres rebuffed the offer and declined to join the gang on religious grounds, the gang member — wielding a knife — warned that "it was better to be with the gang than to be a Christian." *Id.* at 330. The gangster told

4

Hercules-Torres that, if he did not join Mara 18, its members would not only kill him, they would also make certain that his "family would see the consequences." *Id.* A group led by the older gang member then restrained Hercules-Torres and tattooed him. The tattoo — three dots on Hercules-Torres's right middle finger — is the Mara 18 symbol representing "jail, death, [and] hospital." *Id.* at 209. According to Hercules-Torres, the gang tattooed him because he is "a Christian and in [his] church [they] spoke against being a gang member and against [the gang], because . . . they are no good for [his] country." *Id.* Prior to the tattooing, the gang members had never physically harmed Hercules-Torres but had made a series of escalating threats.

Hercules-Torres was not alone in experiencing such tactics by Mara 18. Some of his schoolmates were forcibly tattooed by gang members who wanted to leave their victims with no choice but to join the gang. And a friend of Hercules-Torres was subjected to a parallel course of abuse. The Mara 18 gang forcibly tattooed — and later killed — the friend, who had refused to join "because he was a Christian." *See* A.R. 210.

After Hercules-Torres's tattooing, he dropped out of school and did not leave his house, except to attend church, for about seven months. He did not report the threats or assaults to the police, however, because he feared they would consider him a member of Mara 18 based on his tattoo. Before being tattooed, the police had stopped Hercules-Torres two to three times a week to question him about being a gang member. Those interviews occurred regularly, despite Hercules-Torres's clean record. Indeed, he was never a member of a gang and was never arrested in El Salvador. Because of these problems, Hercules-Torres fled his native country.

5

2.

In the IJ proceedings, Hercules-Torres reported that he feared being removed from the United States to El Salvador because of the gangs and the police. He believed that members of Mara 18 would recognize him, know that he had refused to join them, and kill him. He also believed that, after being removed to El Salvador, the police would beat and jail him simply because he was tattooed. Hercules-Torres said that, due to the existing close relationship between gang members and the police, no one could protect him if he returned. Because of gang-related violence in El Salvador, Hercules-Torres said he could not safely live anywhere in the country.

Hercules-Torres's younger brother, Wilfredo, corroborated much of Hercules-Torres's evidence regarding what had transpired in El Salvador. At the time of the IJ hearing in 2017, Wilfredo was seventeen years old and, like his older brother, lived in Virginia with their aunt. Wilfredo first came to the United States in December of 2015 — more than a year after his brother — because he had been targeted by Mara 18 when he was fifteen. Wilfredo said that the gang sought to recruit him and his older brother — the petitioner here — in order to boost its dwindling membership, which had been decimated by gang violence.

Based upon this evidence, plus evidentiary submissions related to gang violence in El Salvador, Hercules-Torres's lawyer argued before the IJ that Hercules-Torres should be accorded relief from being removed to his native country. The lawyer contended that, although Mara 18 had initially sought to recruit Hercules-Torres in order to increase their

6

ranks, the escalation of the gang's threats and violence was caused by his resistance on religious grounds, his anti-gang political opinions, and his social group.

C.

About a month after the hearing, on March 13, 2017, the IJ issued his decision in this matter, denying Hercules-Torres's requests for asylum, withholding of removal, and protection under the CAT (the "IJ Decision").[2] Despite deeming Hercules-Torres to be a credible witness, the IJ concluded that Hercules-Torres was unable to prove any of his three claims for relief.

In disposing of the first two claims, the IJ determined that Hercules-Torres had failed to show that either religion, anti-gang political opinions, or social group constituted the statutorily required "one central reason" for his persecution. *See* IJ Decision 4. The IJ explained that "[a]lthough [Hercules-Torres's] credible testimony establishes the gang knew he was a Christian, it does not establish the gang targeted him for forced recruitment *because* he is a Christian." *Id.* at 5. Importantly, the IJ emphasized that Mara 18 had targeted Hercules-Torres before he told them about his religious beliefs. This fact "indicat[ed] gang members were not targeting [Hercules-Torres] because of his religion." *Id.* The IJ also relied on Hercules-Torres's testimony that he "acknowledged the gang members would have forcibly recruited him whether he was a Christian or not because the gang generally targeted students at his school." *Id.* As a result, the IJ

---

[2] The IJ Decision of March 13, 2017, is found in the Administrative Record at A.R. 122 through 130.

7

concluded that Hercules-Torres could not show that religion was "one central reason" for his being targeted by Mara 18. Instead, religion was simply "incidental to [the gang's] recruitment efforts, not a factor that motivated those efforts." *Id.*

Because the IJ concluded that Hercules-Torres had not been persecuted on the protected ground of religion, the IJ was obliged to assess whether Hercules-Torres could establish "a well-founded fear of *future persecution* on account of" his religion. *See* IJ Decision 6 (emphasis added). The IJ Decision then ruled that Hercules-Torres had not satisfied this burden, relying on the rationale of the IJ's past persecution rulings. The IJ Decision thus concluded that Hercules-Torres did not have a well-founded fear of future persecution

> because documentary evidence establishes that the gang members that targeted [Hercules-Torres] primarily target students for recruitment not because of their religion . . . [but instead] to increase membership.

*Id.*

After reaching the conclusion that Hercules-Torres could not prove a well-founded fear of future persecution because of his religion, the IJ Decision determined that Hercules-Torres's asylum request failed. Because Hercules-Torres could not satisfy the lower burden of proof applicable to his asylum claim, he could not meet "the higher burden of proof for withholding of removal." *See* IJ Decision 6. As such, the IJ denied both the asylum claim and the withholding of removal claim.

The IJ Decision then denied Hercules-Torres's CAT claim. In so ruling, the IJ accepted that Hercules-Torres had "established some risk of torture by presenting evidence that gang members threatened to kill him and his family members." *See* IJ

8

Decision 7. As the IJ explained, however, the level of such risk shown by the evidence failed to support a finding that "it is more likely than not [that] gang members will kill [Hercules-Torres] upon [his] return to El Salvador." *Id.* The IJ Decision identified three reasons supporting its ruling against the CAT claim. First, other than forced tattooing, the gang members had never physically harmed Hercules-Torres or his family. Second, the seven-month stay by Hercules-Torres in the safety of his home in El Salvador reduced the likelihood he would be tortured or killed if he returned there. Third, Hercules-Torres's fear of persecution or torture was diminished by the fact that members of his family were yet in El Salvador and remained unharmed.

D.

After being unsuccessful before the IJ, Hercules-Torres appealed the IJ Decision to the BIA. He contended in that appeal that the IJ had erroneously rejected each of his claims for relief. In particular, Hercules-Torres argued that the BIA should review de novo the IJ Decision's that religion was not "one central reason" for the persecution that he had suffered in his native land. Hercules-Torres also urged the BIA to reconsider and overrule its "one central reason" precedent concerning withholding of removal claims. That 2010 precedent is embodied in the BIA's decision of *Matter of C-T-L-*, 25 I. & N. Dec. 341 (BIA 2010). The BIA had therein extended the "one central reason" standard — which by statute was specifically applicable to asylum claims — and made it applicable to claims for withholding of removal. *See Matter of C-T-L-*, 25 I. &. N. Dec. at 350. Hercules-Torres argued to the BIA that *Matter of C-T-L-* was erroneously

decided because of the differences between the relevant statutory provisions.[3]  Finally, Hercules-Torres contended in his BIA appeal that the IJ Decision erred in ruling that he had not shown a sufficient likelihood of torture upon returning to El Salvador.

The BIA Decision rejected each of Hercules-Torres's contentions, adopting the IJ Decision and supplementing it in part.[4]  Applying the pertinent standards of review — clear error for factual findings, and de novo for legal questions — the BIA upheld the IJ's rejection of each of the three claims.  Assessing the asylum request, the BIA agreed with the IJ and discerned no clear error in the IJ's finding that "the gang members . . . were not motivated by . . . religion but by their desire to increase their ranks."  *See* BIA Decision 1-2.  Indeed, the BIA explicitly stated that there was "no evidence that the gang members targeted Christians or that religion was a factor in their recruitment efforts."  *Id.* at 2.  The BIA Decision thus affirmed the IJ's denial of the asylum claim.  As a result, the BIA Decision also rejected Hercules-Torres's withholding of removal claim.  Recognizing

---

[3] Asylum is only available to claimants who have been persecuted or who have "a well-founded fear of persecution on account of [a protected ground]."  *See* 8 U.S.C. § 1101(a)(42)(A).  Pursuant to statute, an asylum claimant has the burden to "establish that [a protected ground] was or will be at least *one central reason* for persecuting the applicant."  *See id.* § 1158(b)(1)(B)(i) (emphasis added).  The language of the asylum statute, however, differs from the language of the withholding of removal statute.  Withholding of removal is only authorized if an applicant's "life or freedom would be threatened . . . because of [a protected ground]."  *See id.* § 1231(b)(3)(A).  To sustain a withholding of removal claim, a claimant must show that his "life or freedom would be threatened for *a reason* described in [the list of protected grounds]."  *See id.* § 1231(b)(3)(C) (emphasis added).

[4] The BIA Decision of September 1, 2017, is found in the Administrative Record at A.R. 3 through 5.

that Hercules-Torres could not satisfy the asylum requirements, the BIA explained — as had the IJ — that Hercules-Torres's withholding of removal claim "necessarily" failed because it "carries a higher burden of proof" than the asylum claim. *Id.* at 2.

The BIA also addressed and rejected Hercules-Torres's contention that it should reconsider and overrule its "one central reason" precedent with respect to withholding of removal claims. That issue implicated the Ninth Circuit's 2017 rejection of the BIA's precedent in *Matter of C-T-L-*. According to that court of appeals, the pertinent statutory text does not require an application of the "one central reason" standard to withholding of removal claims. *See Barajas-Romero v. Lynch*, 846 F.3d 351, 360 (9th Cir. 2017) (recognizing and explaining that language of asylum and withholding of removal statutes is unambiguously and materially different). The BIA Decision, however, rejected that invitation of Hercules-Torres and declined to reconsider and overturn its ruling in *Matter of C-T-L-*. The BIA simply explained that it was not bound by the Ninth Circuit's ruling, emphasizing that it was not obliged to "follow the published decisions of a court outside the circuit in whose jurisdiction the case arises." *See* BIA Decision 2.

Finally, in disposing of the CAT claim, the BIA Decision again agreed with the IJ Decision. Hercules-Torres, as the BIA related, had not demonstrated past torture or proved that it was more likely than not he would be tortured after returning to El

11

Salvador.[5]  The BIA Decision thus agreed with the IJ's rulings and affirmed each of them.

On September 13, 2017, Hercules-Torres filed the petition for review that we are now called upon to evaluate.[6]  Hercules-Torres does not, however, seek review of any IJ and BIA rulings that are predicated on political opinions or social groups.  He seeks relief in this Court solely with respect to the IJ and BIA rulings respecting his religion-based claims and the CAT claim.  We possess jurisdiction pursuant to 8 U.S.C. § 1252(a)(1).

II.

When the BIA has affirmed an IJ decision by filing a decision of its own, we assess both decisions.  *See Salgado-Sosa v. Sessions*, 882 F.3d 451, 456 (4th Cir. 2018).  In so doing, we review the factual findings of an IJ for substantial evidence.  *See id.*  In conducting our substantial evidence review, we treat findings of fact "as conclusive 'unless any reasonable adjudicator would be compelled to conclude to the contrary.'"  *Id.* (quoting *Hernandez-Avalos v. Lynch*, 784 F.3d 944, 948 (4th Cir. 2015)).  Substantial evidence has been defined as less than a preponderance but "more than a scintilla" of evidence.  *See N.L.R.B. v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300

---

[5] The BIA Decision incorrectly recited that Hercules-Torres has "not established that it is more likely than not that he will be tortured . . . upon his return to Mexico."  *See* BIA Decision 2.  Hercules-Torres, however, is from El Salvador, and not from Mexico.

[6] On September 29, 2017, Hercules-Torres moved in this Court for a stay of removal pending disposition of his petition for review.  We denied that motion.

(1939); *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) ("[Substantial evidence] consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."); *see also I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (relying on *N.L.R.B. v. Columbian Enameling & Stamping Co.* to explain "substantial evidence" in immigration context). In reviewing the legal rulings of an IJ or the BIA, we apply a de novo standard. *See Salgado-Sosa*, 882 F.3d at 456.

III.

Hercules-Torres seeks our review of the IJ and BIA denials of his three claims for relief — asylum, withholding of removal, and CAT protection. Our review of his asylum claim requires an analysis of two contentions: (1) that the BIA applied an incorrect standard of review to the IJ's determination that Hercules-Torres's religion was not "one central reason" for his persecution; and (2) that the IJ and BIA erred in determining that Hercules-Torres's religion was not "one central reason" for his persecution. Our evaluation of Hercules-Torres's withholding of removal claim involves only one contention. That is, Hercules-Torres asserts that the BIA's precedent concerning withholding of removal claims erroneously applies the "one central reason" requirement, and he urges us to adhere to the recent decision of the Ninth Circuit rejecting that BIA precedent. Finally, in reviewing the CAT claim, we must assess two contentions: (1) that the BIA again applied an incorrect standard of review; and (2) that the IJ and the BIA erroneously determined that Hercules-Torres was not likely to be tortured if he returned to El Salvador. We will evaluate those contentions in turn.

13

## A.

### 1.

Hercules-Torres maintains that the BIA erroneously applied the clear error standard of review — generally applicable to a review of factual findings — to the IJ's nexus determination, i.e., that religion was not one central reason for his persecution by Mara 18. According to the petition for review, that conclusion was actually a mixed determination of fact and law that was properly subject to de novo review by the BIA. As a result, Hercules-Torres maintains that the BIA should have reviewed the nexus determination de novo, and that it erred in failing to do so.

The applicable regulations circumscribe the scope of the BIA's review of an IJ decision. Pursuant to those regulations, the BIA is barred from engaging "in [a] de novo review of findings of fact determined by an [IJ]," and is required to review an IJ's factual findings for clear error only. *See* 8 C.F.R. § 1003.1(d)(3)(i). When questions are raised as to law, discretion, and "all other issues in appeals," however, the BIA must conduct a de novo review. *See id.* § 1003.1(d)(3)(ii).

We have recognized that a persecutor's motivation for improper conduct is "a classic factual question" that is reviewed on appeal to the BIA for clear error. *See Crespin-Valladares v. Holder*, 632 F.3d 117, 127-28 & n.7 (4th Cir. 2011). After examining the evidence presented by Hercules-Torres, the IJ made a factual finding that "religion was . . . not a factor that motivated [Mara 18's] efforts." *See* IJ Decision 5. And the BIA reviewed that finding for clear error, as required by the applicable regulations and by our precedent in *Crespin-Valladares*.

14

In his petition for review, however, Hercules-Torres seeks to reframe the IJ's finding that religion was not a factor motivating Mara 18. Seeking to avoid being bound by the IJ's finding of fact, he contends that the IJ went beyond a mere factual question. According to Hercules-Torres, the IJ concluded that religion was "one of the motivations" of his Mara 18 persecutors, but not "one central reason" for his persecution. *See* Br. for Pet'r 23-24. He thus maintains that this finding by the IJ was actually a legal ruling that the BIA was obliged to review de novo.

Without question, the IJ determined that Hercules-Torres failed to show that religion was one central reason for his persecution by Mara 18. The IJ, however, so ruled only after explicitly finding that Hercules-Torres's religion had not contributed to the gang members' motivations. Because of that finding on motivation, it follows that Hercules-Torres's religion was not one central reason for his persecution by Mara 18. Put succinctly, the IJ's factual finding concerning Mara 18's motive did not transform into a legal ruling simply because it controlled the one central reason inquiry. As such, the BIA properly reviewed for clear error the IJ's factual finding on Mara 18's motive. *See Crespin-Valladares*, 632 F.3d at 127 (explaining that issue of persecutor's motive was not legal ruling that would authorize de novo review). We therefore reject Hercules-Torres's contention that the BIA applied an erroneous standard of review to the IJ's one central reason determination.

### 2.

In his second asylum-related challenge, Hercules-Torres contends that both the IJ and the BIA erred in concluding that religion was not one central reason for his

persecution. Hercules-Torres maintains that, on this record, "any reasonable adjudicator" would have concluded that he had proved that religion was one central reason for his persecution by Mara 18. *See* Br. for Pet'r 27; *see also Salgado-Sosa v. Sessions*, 882 F.3d 451, 456 (4th Cir. 2018) (describing standard of review).

To qualify for asylum relief, Hercules-Torres was required to demonstrate "that he has suffered past persecution, or [that he] has a well-founded fear of future persecution, on account of" his religion. *See Cordova v. Holder*, 759 F.3d 332, 337 (4th Cir. 2014) (quoting 8 U.S.C. § 1101(a)(42)(A)). In order to establish the "on account of" nexus requirement, Hercules-Torres had to prove that religion was "one central reason" for his persecution. *See Crespin-Valladares*, 632 F.3d at 127 (delineating requirements for asylum claim). That is, he had to "demonstrate that [religion is] more than 'an incidental, tangential, superficial, or subordinate reason' for his persecution." *Id.* (quoting *Quinteros-Mendoza v. Holder*, 556 F.3d 159, 164 (4th Cir. 2009)).

According to Hercules-Torres, the IJ and BIA both erred because they misapprehended the actions of Mara 18 that lie at the heart of his persecution. He argues that Mara 18's forcible tattooing and threats against him and his family prove the requisite persecution to support his asylum claim. He contends that the gang members' comments regarding religion establish that Christianity was one central reason for his persecution. Hercules-Torres maintains that, instead of focusing on the forcible tattooing and threats, the IJ erred in only considering Mara 18's initial recruitment efforts. Hercules-Torres thus posits that, if the IJ had considered the full scope of Mara 18's actions against him, the IJ would have concluded that religion was one central reason for

16

his persecution. That contention, however, does not overcome the evidence that supports the IJ Decision and the BIA's affirmance. *See Salgado-Sosa*, 882 F.3d at 456.

Contrary to Hercules-Torres's contention, the IJ Decision directly addressed the Mara 18 gang members' threats and use of force. After considering the evidence that other students had been similarly threatened and forcibly tattooed, the IJ found that neither the threats nor the use of force were due to Hercules-Torres's religion. The IJ and BIA both recognized that the Mara 18 gang members generally targeted youths, including classmates of Hercules-Torres. Indeed, as the IJ emphasized, Hercules-Torres acknowledged that he would have been forcibly recruited "whether he was a Christian or not because the gang generally targeted students at his school." *See* IJ Decision 5. On the evidence, the IJ determined as a factual matter that Hercules-Torres's religion did not factor into Mara 18's motivation to persecute him. The IJ therefore concluded that the gang's recruitment efforts — by threats and use of force — toward Hercules-Torres were aimed at providing "more opportunities to increase membership," rather than at persecuting him because he was a Christian. *Id.*

Constrained by substantial evidence review, we are unable to conclude that the IJ or BIA erred in deciding that Hercules-Torres's religion was not one central reason for his persecution. The IJ relied on "more than a scintilla" of evidence in determining that Hercules-Torres's religion did not motivate his Mara 18 persecutors. *See N.L.R.B. v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939) (defining substantial evidence). In these circumstances, substantial evidence supports the challenged

17

determination that Hercules-Torres was not targeted because of religion. The asylum claim was thus properly denied.

B.

In addition to his asylum request, Hercules-Torres has consistently claimed that he is entitled to withholding of removal. In his petition for review, Hercules-Torres's sole contention on that claim relates to the proper and applicable nexus standard under the withholding of removal statute. To qualify for withholding of removal, Hercules-Torres had to prove that he was persecuted "because of," inter alia, his religion. *See* 8 U.S.C. § 1231(b)(3)(A). And Hercules-Torres could satisfy his statutory burden by showing that his "life or freedom would be threatened for *a reason*" protected by the statute, i.e., his religion. *See id.* § 1231(b)(3)(A), (C) (emphasis added).

Hercules-Torres contends that the "a reason" standard for a withholding of removal claim is materially different from the "one central reason" standard utilized to assess the nexus question relating to an asylum claim. As he argued before the BIA, Hercules-Torres insists that the BIA's precedent in *Matter of C-T-L-* is legally flawed and should be rejected. To support that proposition, he relies on the Ninth Circuit's recent decision in that regard — *Barajas-Romero v. Lynch*, 846 F.3d 351 (9th Cir. 2017) — and argues that the applicable statutory provision is unambiguous. Hercules-Torres maintains that the BIA was not entitled to interpret the withholding of removal provision as having incorporated the "one central reason" standard. He thus contends that the BIA erroneously denied his withholding of removal claim because it applied the legally incorrect nexus standard.

18

Hercules-Torres's contention, however, is foreclosed by a factual finding made by the IJ. As we have explained, the IJ Decision explicitly found that religion was not a motivating factor in Hercules-Torres's persecution by Mara 18. Because of that finding, Hercules-Torres's withholding of removal claim must necessarily fail. Regardless of the standard that is applied — either "one central reason" or "a reason" — Hercules-Torres cannot prove the nexus requirement for his withholding of removal claim. As a result, we need not engage in the debate over whether the Ninth Circuit decision is correct about the BIA precedent in *Matter of C-T-L-*. In these circumstances, we are unable to disturb the BIA's ruling on the withholding of removal claim.

## C.

Finally, we turn to Hercules-Torres's CAT claim. The IJ Decision ruled that Hercules-Torres had failed to prove a necessary element of the CAT claim, that is, a sufficient likelihood of torture upon his return to El Salvador. The BIA Decision agreed with the IJ that Hercules-Torres had failed to prove that it was more likely than not that he would be tortured in El Salvador. In his petition for review, Hercules-Torres asserts two bases on which the BIA erred in denying his request for CAT protection. Those are: (1) that the BIA applied an incorrect standard of review; and (2) that the BIA erroneously determined that Hercules-Torres had not experienced past torture at the hands of Mara 18.

## 1.

First, Hercules-Torres argues that the BIA erred in applying the clear error standard of review to the IJ's determination of the likelihood that Hercules-Torres would

19

be tortured if he returned to El Salvador. To receive CAT protection, Hercules-Torres had to demonstrate "that it is more likely than not that he will be tortured if returned" to El Salvador. *See Zelaya v. Holder*, 668 F.3d 159, 161 (4th Cir. 2012) (explaining standard for CAT award).[7] We have recognized that the BIA should apply a bifurcated standard of review to an IJ's determination of whether a CAT claimant has proven that it is more likely than not that he will be tortured. *See Turkson v. Holder*, 667 F.3d 523, 529-30 (4th Cir. 2012). The BIA applies clear error review to a question of what is likely to occur to a CAT applicant upon his return to his native country, because "the likelihood of future mistreatment is a factual determination." *Id.* at 529. The BIA reviews de novo, however, a question regarding whether "likely future mistreatment amounts to 'torture' under CAT" because that is a legal question. *Id.*

In this situation, the BIA applied clear error review to the IJ's denial of Hercules-Torres's CAT claim, which rested on a factual finding. The IJ, relying on Hercules-Torres's seven-month period of self-imposed home isolation in El Salvador, concluded that the "record evidence does not support that it is more likely than not gang members will kill [Hercules-Torres] upon return to El Salvador." *See* IJ Decision 7. The IJ also observed that Hercules-Torres "established some risk of torture." *Id.* By recognizing

---

[7] The CAT regulations define "torture" as "any act [that intentionally inflicts] severe pain or suffering, whether physical or mental" in order to obtain information or a confession, exact punishment, or intimidate or coerce a person. *See* 8 C.F.R. § 1208.18(a)(1). An act of torture can be done "for any reason based on discrimination of any kind." *Id.* Further, "a public official or other person acting in an official capacity" must inflict the pain or suffering, or instigate, consent to, or acquiesce in the act. *Id.*

20

"some risk of torture," the IJ may well have assumed that Hercules-Torres's future mistreatment qualified as torture, that is, the IJ seemingly answered the legal question in his favor. The IJ then concluded, however, that Hercules-Torres's CAT claim failed because the probability that mistreatment would occur was overly remote. As we have recognized, a prediction "of future conditions [is a] factual find[ing] entitled to deference under the clearly erroneous standard." *See Turkson*, 667 F.3d at 529. Because the IJ's CAT claim ruling turned on the likelihood of future conditions, it was a fact-based determination and thus subject to clear error review by the BIA. Put simply, the BIA correctly applied the clear error standard of review to the factual finding underlying the IJ's denial of the CAT claim.

2.

Second, Hercules-Torres challenges the BIA's determination that, based on the record as a whole, he had "not been tortured in the past." *See* BIA Decision 2 & n.2. Hercules-Torres maintains that this conclusion by the BIA was erroneous and that the denial of his CAT claim must be vacated.

Regardless of the BIA's conclusion on the past mistreatment of Hercules-Torres, the IJ Decision properly determined that his CAT claim must fail. The IJ's denial of the CAT claim hinged on Hercules-Torres's failure to show that it was more likely than not that he would be tortured in the future. In analyzing that question, the IJ considered the past threats and violence that the Mara 18 gang members had directed at Hercules-Torres, as well as the seven months of isolation during which he had no contact with the gang. Although "evidence of past torture is relevant" to a determination regarding the

likelihood of future torture, such evidence does not "create a presumption that an applicant will be tortured in the future." *See Suarez-Valenzuela v. Holder*, 714 F.3d 241, 245 (4th Cir. 2013). Consistent with that mandate, the IJ considered the record and found that the evidence of past mistreatment did not show a likelihood of future mistreatment. On that finding, the IJ determined that Hercules-Torres had not demonstrated that he was likely to be tortured, and thus denied his CAT claim.

At bottom, we are satisfied that the IJ adequately considered the underlying threats and use of force by Mara 18 in determining that Hercules-Torres was not likely to experience torture in the future. Again, the record contains "more than a scintilla" of evidence demonstrating that the mistreatment of Hercules-Torres by Mara 18 was unlikely to again transpire if he returned to El Salvador. *See N.L.R.B.*, 306 U.S. at 300. Thus, the IJ and BIA determinations that Hercules-Torres did not satisfy the requirements for CAT protection are supported by substantial evidence. *See Salgado-Sosa*, 882 F.3d at 457 n.1 (refusing to disturb denial of CAT protection on basis of substantial evidence supporting that denial).

IV.

Pursuant to the foregoing, we deny Hercules-Torres's petition for review.

*PETITION FOR REVIEW DENIED*